Docket No. 90242–Agenda 22–May 2001.

EMMA J. ROBINSON 
et al.
, Appellants, v. TOYOTA MOTOR

CREDIT CORPORATION 
et al.
, Appellees.

JUSTICE KILBRIDE delivered the opinion of the court:

In this case, we review whether plaintiffs’ federal Consumer Leasing Act (CLA) (15 U.S.C. §§1667a, 1667b (1994)) claims are precluded by the 
res judicata
 effect of a class action judgment rendered in another state. We also review whether plaintiffs’ state claims for violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 
et seq.
 (West 1992)) were properly dismissed for failure to state a cause of action.

Plaintiff Emma Robinson leased an automobile from defendant River Oaks Toyota. Plaintiff Latanya Kemp entered into a similar lease agreement with defendant Point One Toyota. Both leases were assigned to defendant Toyota Motor Credit Corporation (Toyota). Plaintiffs then sued all three defendants, claiming that the lease agreements violated various federal and state consumer protection laws. They sought relief for themselves and for a class of persons similarly situated. Such a class was never certified by the court, and plaintiff’s second amended complaint was dismissed with prejudice. The trial court found that plaintiffs’ federal claims were precluded by the 
res judicata
 effect of a California judgment in a class action suit where plaintiffs were members of the class. The state and common law claims were dismissed for failure to state a cause of action.

The appellate court affirmed the dismissal of all of the state-law claims, except the common law breach of contract claim. 315 Ill. App. 3d 1086. The appellate court reversed as to that count and remanded the cause to the trial court. Toyota does not contest that ruling here. The appellate court affirmed the dismissal of two of the federal claims as barred by 
res judicata
, but found the remaining federal claim to be an individual claim not included in the class action and, thus, not barred. 315 Ill. App. 3d at 1093.

We allowed plaintiffs’ petition for leave to appeal (177 Ill. 2d R. 315). For the reasons that follow, we hold that the California judgment specifically reserved from the settlement certain CLA claims and that plaintiffs’ CLA claims are not barred by the 
res judicata
 effect of the California judgment. We further hold that the appellate court properly sustained the dismissal of the state Consumer Fraud Act claims. We therefore affirm in part and reverse in part the judgments of the appellate and circuit courts and remand the cause to the circuit court for further proceedings.

I. BACKGROUND

On May 14, 1993, plaintiff Kemp entered into a 48-month, closed-end motor vehicle lease with defendant Point One Toyota. On July 6, 1993, plaintiff Robinson entered into a similar 42-month lease agreement with defendant River Oaks Toyota. Both leases were assigned to defendant Toyota Motor Credit Corporation.

At the time plaintiffs’ leases were signed, a class action was pending in the circuit court of Cook County, where individual lessees of River Oaks Toyota sought relief against that company and Toyota for alleged violations of the CLA and the Consumer Fraud Act. 
Mortimer v. River Oaks Toyota, Inc.
, 278 Ill. App. 3d 597 (1996). On July 7, 1993, the 
Mortimer
 class of persons was certified. In September, 1993, the class was notified by mail and publication. 
Mortimer
, 278 Ill. App. 3d at 599. Plaintiffs received the 
Mortimer
 notice and elected to opt out of that class action and settlement.

Plaintiffs then filed a 12-count complaint against defendants in August of 1995, alleging causes of action similar to those alleged in 
Mortimer
. After their original complaint was dismissed, plaintiffs filed an amended complaint and, in June 1996, filed a motion seeking class certification. Toyota responded and asserted that plaintiffs’ motion should be denied because a California trial court had already certified a nationwide class that included the plaintiffs (Ramirez v. Toyota Motor Credit Corp., No. 752044–8 (Alameda Co. Sup. Ct.)). The Ramirez class certification included all persons who leased a vehicle pursuant to a Toyota lease agreement in the United States after August 1, 1993, or who had opted out of the 
Mortimer
 class action. Plaintiffs were notified of the Ramirez certification and were given an opt-out deadline of September 2, 1996. They did not meet that deadline. Instead, plaintiffs sought leave from the California court to extend the opt-out period and to modify the class definition. Their motions were denied in December 1996.

In January 1997, our trial court granted Toyota’s motion to dismiss plaintiffs’ first amended complaint pursuant to section 2–619 of the Code of Civil Procedure (Code) (735 ILCS 5/2–619 (West 1996)), finding that plaintiffs were Ramirez class members. The trial court dismissed without prejudice, stating that plaintiffs could petition to reinstate their action if the California appeals court reversed the Ramirez trial court decision denying plaintiffs’ motion to extend the opt-out period. Plaintiffs’ appeal of the Ramirez court’s denial of their motion to extend the opt-out period and to enlarge the class definition was dismissed in an unpublished order by the California appellate court in June of 1997.

On August 27, 1997, the Ramirez class action was settled subject to final approval by the trial court. The settlement agreement defined with particularity the causes of action released by non-California settlement class members. Toyota settled for a release of liability from certain claims as follows:

“any violation of (1) any California or federal statutory or common law or regulation which was or could have been asserted relating to [Toyota’s] disclosures, formula, methodology and charges for auction, transportation and/or reconditioning fees or the collection of such charges; (2) any statutory or common law, regulation, or any other allegation or claim based on California law which was or could have been asserted in the action relating to disclosure of the capitalized cost or initial value of leased vehicles; (3) any statutory or common law, regulation or any other allegation or claim based on California law which was or could have been asserted in the action relating to [ Toyota’s] early termination/default disclosure, formula, methodology, and charges.”

Furthermore, with regard to non-California class members, the settlement specifically excluded from release certain claims as follows:

“any other statutory or common law claims, including but not limited to claims such as (i) claims brought under the laws of states other than California to the extent that such claims exist and are not barred by the laws of such states or by any order of the court in that action; (ii) claims brought under the Federal Consumer Leasing Act and Regulation M (12 C.F.R. part 2213) arising out of matters other than Toyota’s disclosure of, and charges for, auction, transportation and/or reconditioning fees or the collection or attempted collection of such charges.”

The settlement required the filing of a second amended complaint with a motion for approval of the settlement. The second amended complaint was filed September 9, 1997, and included two counts alleging violation of the CLA and Regulation M (12 C.F.R. §213.4(g) (2001)). Those counts contained allegations accusing Toyota of a failure to disclose in a meaningful sequence its early termination or default methodology and charges for auction, transportation, and reconditioning.

The settlement further reserved to Toyota its right to argue, under applicable law, that its payment of the statutory penalty under the CLA for California class members “constitutes the full amount of statutory damages available under the CLA for ‘any class action or series of class actions arising out of the same failure to comply.’ ” Non-California class members also reserved their right to argue to the contrary under applicable law.

On December 10, 1997, the settlement was approved by the California trial court, and it was incorporated in a final order and judgment. The final judgment provided that it applied to all claims and causes of action settled under its terms and it was made binding on all members of the plaintiff settlement class who had not opted out of the action. The judgment further directed dismissal of the second amended complaint with prejudice. Plaintiffs’ counsel participated in the final judgment hearing and did not object to the approval of the settlement or to the terms of the final judgment.

On December 30, 1997, plaintiffs filed a motion to decertify in Ramirez. The California trial court denied that motion on February 6, 1998, but entered the following order:

“IT IS HEREBY ORDERED that the motion to Decertify Ms. Robinson and Ms. Kemp is DENIED. However, based on the Court’s ruling re: Motion for Summary Adjudication of Issues dated January 27, 1997, the court hereby orders that each of the petitioners herein, i.e., Robinson and Kemp, may continue or file his or her own lawsuit against Toyota Motor Credit Corporation in the State of Illinois based upon violations of Illinois law. This court does not address any right to pursue claims under Federal law.”

Following the entry of the Ramirez settlement judgment, the circuit court below granted plaintiffs’ motion to reinstate. Plaintiffs then filed a second amended complaint, alleging violations of the CLA, the Consumer Fraud Act, the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 
et seq.
 (West 1994)), and a common law breach of contract. Plaintiffs also sought class action certification in addition to their claims for individual relief. The CLA claims asserted that Toyota: (1) failed either to allow early termination or to disclose penalties for early termination in violation of Regulation M; (2) failed to disclose Illinois sales, excise, use or rental taxes in the Kemp lease; and (3) failed to disclose in a meaningful sequence penalties for early termination or default so that the unsophisticated consumer could understand the requirements of the lease. Toyota filed a motion pursuant to section 2–619 of the Code of Civil Procedure to dismiss those claims as barred by the 
res judicata
 effect of the Ramirez judgment and moved to dismiss the state and common law claims pursuant to section 2–615 of the Code for failure to state a cause of action (735 ILCS 5/2–619, 2–615 (West 1996)). Those motions were granted and the cause dismissed with prejudice. No plaintiff class was certified. Plaintiffs appealed.

The appellate court held that all of plaintiffs’ CLA claims except the individual claim of Kemp relating to undisclosed taxes were barred by 
res judicata
. 315 Ill. App. 3d at 1093. The appellate court affirmed the findings of the trial court that the Consumer Fraud Act claim and the Uniform Deceptive Trade Practices Act claim failed to state a cause of action, but it reversed the trial court’s dismissal of the breach of contract claim. The latter holding was not challenged by Toyota. Plaintiffs appeal to this court, arguing that 
res judicata
 does not preclude their federal claims and that their pleading was sufficient to aver valid claims under the Consumer Fraud Act.

II. ANALYSIS

A. 
Res Judicata

The trial court granted Toyota’s motion to dismiss plaintiffs’ CLA claims pursuant to section 2–619 of the Code, finding that they were barred by the 
res judicata
 effect of the California judgment. The appellate court affirmed the dismissal of two of the class-wide CLA claims and reversed the dismissal of Kemp’s individual CLA claim. Toyota does not challenge the ruling on Kemp’s individual CLA claim. A section 2–619 motion to dismiss presents a question of law, and our review is 
de novo. Parks v. Kownacki
, 193 Ill. 2d 164, 175 (2000).

The appellate court applied the 
res judicata
 analysis set out in 
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290 (1998). In 
River Park
, we held that the doctrine of 
res judicata
 applies when the following criteria are met: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of parties or their privies; and (3) identity of causes of action. 
River Park
, 184 Ill. 2d at 302.

The appellate court reasoned that application of the 
River Park
 test barred two CLA claims based on the lease provisions regarding (1) early termination and violation of Regulation M and (2) the failure to disclose early termination and default penalties in a meaningful sequence. The appellate court concluded that the first two prongs of the test indisputably applied to plaintiffs’ claims. Regarding the third prong involving the identity of causes of action, the appellate court held that plaintiffs’ claims as class members in Ramirez and the claims asserted in this action arose from the same core of operative facts and, thus, are the same. Specifically, the appellate court found that the core operative facts of plaintiffs’ 1993 leases with Toyota gave rise to their inclusion as class members in Ramirez and also formed the basis for their alleged CLA claims here. 315 Ill. App. 3d at 1092. According to the appellate court, those claims could have been asserted in Ramirez. 315 Ill. App. 3d at 1092-93. Therefore, the court concluded that those claims are precluded by the 
res judicata
 effect of the California judgment. 315 Ill. App. 3d at 1092-93.

Initially, we note that plaintiffs contend that California law applies a different standard than Illinois in determining whether a subsequent action is precluded by 
res judicata.
 They assert that under the California standard, the judgment would not prevent the assertion of the causes of action pleaded in their second amended complaint and that Illinois must extend full faith and credit to the effect of the Ramirez judgment as determined by the law of California.

We need not address that argument because it is raised for the first time in this court. In the appellate court, plaintiffs countered the 
res judicata
 hurdle by arguing that the California judgment was void for want of proper notice. The court rejected that argument and held that plaintiffs were given constitutionally proper notice of the Ramirez action and that any order or judgment in that case affecting them is not void. 315 Ill. App. 3d at 1094. In their petition for leave to appeal to this court, plaintiffs do not reassert their notice argument; instead, they raise a new full faith and credit argument. Plaintiffs never raised this argument in the trial court and, therefore, it is waived. See 
Wagner v. City of Chicago
, 166 Ill. 2d 144, 147 (1995).

Nonetheless, plaintiffs argue that under the 
River Park
 test no identity of causes of action existed between the Robinson and the Ramirez lawsuits for two reasons. First, plaintiffs contend that the CLA disclosure violation claims here are distinct from the CLA claims in Ramirez. In Ramirez, the CLA disclosure claims focused solely on auction, transportation, and reconditioning fees. Plaintiffs’ CLA claims at issue here complain that Toyota: (1) failed to allow early termination; (2) failed to disclose early termination penalties; and (3) failed to disclose in a meaningful sequence the penalties for early termination or default. Second, plaintiffs argue that the Ramirez settlement specifically excluded all kinds of claims other than the disclosure violations concerning auction, transportation, and reconditioning fees. Thus, plaintiffs contend that the right to assert the CLA claims was reserved in the Ramirez settlement.

Generally, parties may by agreement sever or reserve causes of action or a court may expressly reserve a plaintiff’s right to maintain a second action. Restatement (Second) of Judgments §26(1)(b) (1982). We recognized this exception to the application of 
res judicata
 in 
Nowak v. St. Rita High School
, 197 Ill. 2d 381, 392-93 (2001), where a federal court declined jurisdiction over pendent state claims.

Similarly, the Seventh Circuit Court of Appeals acknowledged the Restatement exception in 
D&K Properties Crystal Lake v. Mutual Life Insurance Co.
 
of
 
New York
, 112 F.3d 257 (7th Cir. 1997). The court held, however, that the reservation of a cause of action must be “both express, as in writing, and express, as in specifically identified.” 
D&K Properties
, 112 F.3d at 261. In general, we agree that to avoid the preclusive effect of 
res judicata
 any reservation of a cause of action must be expressly reserved by the parties.

Applying the 
res judicata
 exception to this case, it is evident that certain claims were specifically reserved in writing in the settlement agreement approved by the California court. Those claims were identified in the agreement as:

“(i) claims brought under the laws of states other than California, to the extent such claims exist and are not barred by state law or by any other order of the Court herein; and (ii) claims brought under the CLA and Regulation M arising out of matters 
other
 
than
 [Toyota’s] 
disclosures of and charges for auction, transportation, and/or reconditioning fees
.” (Emphasis added.)

Plaintiffs’ second amended complaint alleges claims under the CLA and Regulation M for the failure of Toyota either to allow early termination of its lease or to disclose, in a meaningful sequence, the penalties for early termination or default. Those claims do not arise out of Toyota’s disclosures of and charges for auction, transportation, or reconditioning fees. Therefore, plaintiffs’ claims are within the specifically reserved category of claims not covered by the Ramirez settlement.

Toyota argues, however, that those claims are nonetheless barred because they were actually litigated in Ramirez. This assertion is based on a count in the second amended complaint filed by stipulation in Ramirez, containing an allegation that Toyota failed “fully, clearly and conspicuously [to] disclose in its leases the liability of lessees who terminate early for auction, transportation and reconditioning fees.” The settlement specifically provided for the dismissal with prejudice of the second amended complaint. Nevertheless, that dismissal was required by the same settlement specifically reserving certain CLA claims to plaintiffs and other lessees. Accordingly, we conclude that the filing and subsequent dismissal of a complaint by agreement of the parties as part of a settlement agreement does not constitute the “litigation” of all the claims asserted when certain of those claims were expressly and specifically reserved by the final judgment approving the settlement.

Additionally, Toyota argues that the mutual reservation of a right to argue the effect of its payment of statutory penalties under the CLA for California class members establishes that all CLA claims were in fact litigated in Ramirez. We disagree.

The settlement contained the following language:

“6.06 
CLA Statutory Damages
 The parties understand and agree that this settlement includes all claims concerning [Toyota’s] early termination/default disclosures, formula, methodology and charges (including but not limited to auction, transportation, and reconditioning fees) which were asserted or could have been asserted in this lawsuit under the CLA 
with regard to California class members
. [Toyota] reserves its rights to argue, under applicable law, that its payment of the CLA statutory penalty for California class members constitutes the full amount of statutory damages available under the CLA for any class action or series of class actions arising out of the same failure to comply. Non-California class members reserve their rights to argue to the contrary under applicable law.” (Emphasis added.)

This settlement language is preclusive only as to California class members. Regarding non-California plaintiffs, it merely reserves to each party the right to argue the legal effect of the payment. In Illinois, the trial court must determine whether the maximum statutory penalty was in fact paid and whether payment could operate to satisfy claims specifically reserved by the Ramirez settlement.

We hold, therefore, that the Ramirez judgment does not preclude plaintiffs’ CLA claims found in counts I and III of their second amended complaint. The appellate court erred in affirming the dismissal of those counts by the trial court pursuant to section 2–619 of the Code.

Alternatively, Toyota urges us to reach the issue of whether plaintiffs’ CLA claims in counts I and III should be dismissed because they fail substantively. Neither the trial court nor the appellate court previously considered those issues because of the procedural posture of the case. Thus, we decline to reach that question, and we leave it for the trial court to decide on remand.

B. Plaintiffs’ State Claims

We now turn to plaintiffs’ remaining arguments concerning the dismissal of their Consumer Fraud Act claims in count IV of the second amended complaint. Initially, we observe that plaintiffs’ scattered approach to pleading their second amended complaint and the nonsequential arguments in their brief regarding the sufficiency of the allegations in count IV create confusion, if not incoherence. Thus, we read plaintiffs’ petition for leave to appeal and supplemental brief to assert as error only the appellate court’s holdings regarding (1) double penalties for excess wear and tear, and mileage; (2) concealment of capitalization and guaranteed automobile protection (GAP) charges; (3) double recovery for auction, transportation and reconditioning fees; (4) and early termination charges. These assertions challenge only the dismissal of count IV of plaintiffs’ complaint. We note that plaintiffs did not seek leave from the trial court to amend further their complaint after its dismissal.

We first review the general requirements of claims brought under the Consumer Fraud Act. The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. It is to be liberally construed to effectuate its purpose. 
Cripe v. Leiter
, 184 Ill. 2d 185, 191 (1998). Unfair or deceptive practices are described in the Act as:

“including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce ***.” 815 ILCS 505/2 (West 1992).

Section 10(a) of the Consumer Fraud Act creates a remedy for persons who suffer damage as a result of a violation of the Act committed by another person. 815 ILCS 505/10a(a) (West 1992).

The elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant’s intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce. 
Cripe
, 184 Ill. 2d at 191. Recovery may be had for unfair as well as deceptive conduct. See 
Saunders v. Michigan Avenue National Bank
, 278 Ill. App. 3d 307, 313 (1996).

In determining whether a given course of conduct or act is unfair, we observe the Consumer Fraud Act mandates that “consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.” 815 ILCS 505/2 (West 1992). The United States Supreme Court in 
Federal Trade Comm’n v. Sperry & Hutchinson Co.
, 405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898 (1972), cited with approval the published statement of factors considered by the Federal Trade Commission in measuring unfairness. 
Sperry
, 405 U.S. at 244 n.5, 31 L. Ed. 2d at 179 n.5, 92 S. Ct. at 905 n.5. These factors are (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. 
Sperry
, 405 U.S. at 244 n.5, 31 L. Ed. 2d at 179 n.5, 92 S. Ct. at 905 n.5.

In 
Saunders
, the court applied 
Sperry
 and held to be insufficient plaintiff’s allegation in a Consumer Fraud Act complaint that bank fees charged for overdrafts were excessive. 
Saunders
, 278 Ill. App. 3d at 313-14. The court noted that charging an unconscionably high price generally is insufficient to establish a claim for unfairness. 
Saunders
, 278 Ill. App. 3d at 313. Citing 
Sperry
, the court held that defendant’s conduct must violate public policy, be so oppressive as to leave the consumer with little alternative except to submit to it, and injure the consumer. 
Saunders
, 278 Ill. App. 3d at 313, citing 
Sperry
, 405 U.S. at 244 n.5, 31 L. Ed. 2d at 179 n.5, 92 S. Ct. at 905 n.5.

Although the holding in 
Saunders
 seems to suggest that all three prongs of the 
Sperry
 test must be met, that is not an accurate statement of plaintiffs’ burden. As the Connecticut Supreme Court held in interpreting that state’s unfair trade practices statute, all three of the criteria in 
Sperry
 do not need to be satisfied to support a finding of unfairness. 
Cheshire Mortgage Services, Inc. v. Montes
, 223 Conn. 80, 106, 612 A.2d 1130, 1143 (1992). The 
Cheshire
 court cited with approval and quoted the 
Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures
, 43 Fed. Reg. 59,614, 59,635 (1978), as follows:

“ ‘All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.’ ” 
Cheshire
, 223 Conn. at 106, 612 A.2d at 1143-44.

We believe 
Cheshire
 expresses the correct standard and hereby adopt it as our own.

Turning to the procedural posture of this case, a ruling on a section 2–615 motion to dismiss presents a question of law and our review is 
de novo. Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 491 (1999). The question we must determine is whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to allege a cause of action. 
Jackson v. South Holland Dodge, Inc.
, 197 Ill. 2d 39 (2001). The complaint must state with particularity and specificity the deceptive manner of defendant’s acts or practices, and the failure to make such averments requires the dismissal of the complaint. 
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 502 (1996).

Plaintiffs allege that Toyota’s various acts and omissions violate the Consumer Fraud Act because they are unfair or deceptive trade practices. The appellate court reviewed in turn each of the allegations, involving early termination, capitalized costs, GAP charges, double penalties, and auction, transportation, and reconditioning fees. It found that none of those allegations were sufficient to show that Toyota’s conduct was either deceptive or unfair. 315 Ill. App. 3d at 1096-97. We now review the appellate court’s holdings as to each of plaintiffs’ claims.

1. 
Double Penalties

Plaintiffs’ complaint described the default penalties as unfair because the lease required both an excess mileage penalty and payment for excess wear and tear, including scratches and dents. According to plaintiffs, the penalties assessed for excess wear and tear are subsumed by those for excess mileage. Applying the 
Sperry
 standard to these allegations, it is apparent that plaintiffs’ complaint fails to describe conduct so unfair as to allow a recovery.

The appellate court held in this case that there was a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness, observing that plaintiffs could have gone elsewhere to lease a car. 315 Ill. App. 3d at 1096. The court also held that the assessment of a $0.10-per-mile penalty for every mile exceeding 15,000 annual miles, coupled with a requirement that plaintiffs pay for excess wear and tear, was not so oppressive as to constitute unfairness. 315 Ill. App. 3d at 1096. Further, since those penalty provisions are clearly set out in the lease, plaintiffs have not alleged sufficient facts to establish that Toyota’s conduct was deceptive. 315 Ill. App. 3d at 1096-97. We agree with each of these findings. We further observe that plaintiffs’ complaint contains no allegation that the lease provisions at issue violate public policy. Thus, plaintiffs’ allegations describe neither unfair nor deceptive conduct.

Plaintiffs cite 
Ekl v. Knecht
, 223 Ill. App. 3d 234 (1991), to support their argument that an act or practice may be unfair even if a consumer could have chosen another vendor. That case is clearly not apposite. There, the plaintiff sought recovery under the Consumer Fraud Act against a plumber who charged an unreasonably high fee for his services. The court found that the plumber’s threat to undo his work and turn off plaintiff’s water if he was not paid immediately was coercive and oppressive conduct in violation of public policy. 
Ekl
, 223 Ill. App. 3d at 242. This conduct resulted in substantial harm to the plaintiff because she was compelled to pay an unreasonable amount for the work in excess of what she would have reasonable agreed to pay. 
Ekl
, 223 Ill. App. 3d at 242. Thus, all three prongs of the unfairness test were satisfied. 
Ekl
, 223 Ill. App. 3d at 242-43.

Plaintiffs do not allege in their complaint that they were coerced into signing the leases because of dire alternatives threatened by Toyota. They do not even assert that they lacked reasonable alternatives in the marketplace to acquire automobiles. Plaintiffs argue here that all automobile leases have standard provisions and that leases are not negotiable. However, no such averments appear in the pleadings. Thus, the appellate court correctly held that plaintiffs’ bald claim of unfairness or deception was not sufficient to state a claim.

2. 
Capitalized Costs/GAP Charges

As to the alleged failure to disclose capitalized cost and GAP charges, the appellate court held that Toyota complied with the requirements of the Truth in Lending Act (TILA) (15 U.S.C. §1601 
et seq.
 (1994)) and that compliance was a complete defense under section 10(b)(1) of the Consumer Fraud Act. That statute provides that it does not apply to “[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.” 815 ILCS 505/10b(1) (West 1996); see 315 Ill. App. 3d at 1097. Plaintiffs argue that the trial and appellate courts erred because the mere fact that TILA does not address the failure to disclose capitalized costs and GAP charges does not mean that Toyota is not liable under Illinois law for the concealment of capitalized cost and GAP charges. According to plaintiffs, capitalized cost and GAP charges are important terms.

Plaintiffs’ complaint, however, contains absolutely no description of why or how the claimed disclosure failures are unfair. Plaintiffs’ bare assertion of unfairness without describing in what manner the lack of disclosures either violate public policy or are oppressive is insufficient to state a cause of action under the standard required by 
Sperry.
 See also 
Connick
, 174 Ill. 2d at 502. Since TILA does not require disclosure of the charges at issue, there is no basis pleaded under any theory for a Consumer Fraud Act claim arising from the challenged disclosure failures. See 
Jackson v. South Holland Dodge, Inc.
, 197 Ill. 2d 39 (2001).

3. 
Double Recovery

Regarding plaintiffs’ claim for failure to disclose auction, transportation, and reconditioning fees, the appellate court held that plaintiffs had already recovered for those elements of damages under the CLA in the Ramirez action and that they cannot now seek a double recovery in this action. 315 Ill. App. 3d at 1096. Plaintiffs argue that this ruling was error because their Consumer Fraud Act claim for those charges is somehow different from the Ramirez claims. Plaintiffs, however, do not articulate how it is different. Nevertheless, they claim that they should be allowed to recover under both the federal and state statutes. This argument is untenable.

It is well established that for one injury there should only be one recovery irrespective of the availability of multiple remedies and actions. 
Wilson v. The Hoffman Group, Inc.
, 131 Ill. 2d 308, 321 (1989); 
Dial v. City of O’Fallon
, 81 Ill. 2d 548, 558 (1980). Whatever right plaintiffs had to recover against Toyota for damages caused by its imposition, assessment or failure to disclose auction, transportation, and reconditioning fees, it was foreclosed by the California judgment. Allowing plaintiffs to recover those damages in this action would, in effect, constitute a double recovery. In 
Majcher v. Laurel Motors, Inc.
, 287 Ill. App. 3d 719, 738 (1997), it was similarly held that plaintiffs could not recover damages under both a Federal Odometer Act (15 U.S.C. §1989(a) (1982)) claim and a common law fraud claim to remedy a single injury.

Even if plaintiffs had not already recovered for these charges under the CLA, plaintiffs’ allegations do not describe the kind of immoral, unethical, oppressive, or unscrupulous conduct or conduct in violation of public policy necessary to establish that those lease provisions were unfair. Therefore, the complaint does not state a cause of action for the recovery of auction, transportation, and reconditioning fees.

4. 
Early Termination

Plaintiffs’ complaint characterized Toyota’s lease provisions regarding early termination and default charges as both unfair and deceptive. The complaint did not set out any factual underpinnings to support that conclusion. The bare allegation that the failure to allow early termination is a deceptive trade practice is not a specific and particular pleading sufficient to aver a violation of the Consumer Fraud Act. 
Connick
, 174 Ill. 2d at 502. Further, as the appellate court observed, there was no deception because the leases expressly stated that early termination was not permitted. 315 Ill. App. 3d at 1096.

Plaintiffs next argue that the failure to allow early termination is unfair because Toyota could, in the event of a default, repossess the car and then sue plaintiffs for the remaining amounts due on the lease. According to plaintiffs, this result would be a windfall for Toyota and the failure to allow early termination is, therefore, a penalty. These consequences are not, however, alleged in plaintiffs’ complaint and the pleading is thus insufficient under the 
Connick
 standard. See 
Connick
, 174 Ill. 2d at 502.

Consequently, we hold that count IV of plaintiffs’ second amended complaint is insufficient to allege any right to recovery under the Consumer Fraud Act. The appellate court did not err in affirming the dismissal of that count.

III. CONCLUSION

We hold that the appellate court erred in affirming the dismissal of counts I and III of plaintiffs’ second amended complaint, as those claims are not precluded by the 
res judicata
 effect of the California judgment. We therefore reverse the judgment of the appellate court and remand the cause to the trial court for further proceedings as to those counts only. We hold, however, that the appellate court correctly affirmed the dismissal of the Consumer Fraud Act claims as pleaded in count IV.

Appellate court judgment affirmed in part

and reversed in part;

circuit court affirmed in part

and reversed in part;

cause remanded.

JUSTICE THOMAS took no part in the consideration or decision in this case.