In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2150

KEITH HORIST, JOSHUA EYMAN,
and LORI EYMAN,

*Plaintiffs-Appellants*,

*v.*

SUDLER AND COMPANY D/B/A
SUDLER PROPERTY MANAGEMENT and
NEXTLEVEL ASSOCIATION SOLUTIONS, INC.,
D/B/A HOMEWISEDOCS.COM,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 17 C 8113 — **Robert W. Gettleman**, *Judge*.

ARGUED APRIL 11, 2019 — DECIDED OCTOBER 21, 2019

Before SYKES, SCUDDER, and ST. EVE, *Circuit Judges*.

SYKES, *Circuit Judge*. The Illinois Condominium Property
Act requires an elaborate set of disclosures when a condo-
minium unit is resold. The owner must give the prospective
buyer a copy of the condominium declaration and bylaws,

the condominium association's rules, and an array of other documents bearing on the current financial status of the property. 765 ILL. COMP. STAT. 605/22.1(a). The association's board must furnish the required documents within 30 days of the owner's written request, *id*. § 605/22.1(b), and it may charge a reasonable fee for doing so, *id.* § 605/22.1(c). Another provision of the Act allows the association to retain a person or firm to manage the condominium property. *Id.* § 605/18(a)(5).

This lawsuit is a proposed class action against a Chicago property-management firm and its third-party vendor, an online service that assembles a downloadable electronic version of the required disclosure documents, giving unit owners quick and easy access to the material needed to complete a resale transaction. The vendor charges a fee for this service. The plaintiffs are condominium owners who purchased their disclosure documents from the online vendor and now complain that the fee is excessive in violation of the Condominium Act. They also bring claims under the Illinois consumer-fraud statute and three common-law theories: breach of fiduciary duty, unjust enrichment, and civil conspiracy. The district court dismissed the suit.

We affirm. The relevant provision of the Condominium Act does not provide a private right of action, and we see no basis in Illinois law to imply one for condominium owners. The statutory consumer-fraud claim is likewise defective; the Illinois courts have held that charging too much for goods or services is not, standing alone, an unfair practice under the statute. The common-law claims also fail. The complaint does not plead an actionable breach of fiduciary duty, and

unjust enrichment and conspiracy are not independent causes of action under Illinois law.

## I. Background

Keith Horist owned a condominium at 400 East Ohio Street in downtown Chicago and was a member of his building's condominium association. Joshua and Lori Eyman owned a condominium at 1515 South Prairie Avenue, also in downtown Chicago, and they too were members of their condominium association. Both associations retained Sudler and Company, d/b/a Sudler Property Management, to manage their day-to-day operations.

In 2017 Horist and the Eymans put their units on the market and found willing buyers. The Illinois Condominium Property Act requires that "[i]n the event of any resale of a condominium unit by a unit owner[,] … such owner shall obtain from the [association's] Board of Managers and shall make available to the prospective purchaser, upon demand," a copy of the condominium instruments, the association's rules, and a host of other documents reflecting the current financial status of the property.[1] § 605/22.1(a). These are

---

[1] Specifically, the unit owner must provide: (1) a copy of the declaration, bylaws, other condominium instruments, and any rules and regulations; (2) a statement of any liens and an account of the unit, including unpaid assessments and charges due; (3) a statement listing any capital expenditures anticipated by the association within the next two years; (4) a statement of the status and amount of any reserves or replacement funds and any portion earmarked for specified projects; (5) a copy of the association's financial statement for the last fiscal year; (6) a statement of the status of any pending suits or judgments in which the association is a party; (7) a statement of insurance coverage provided to unit owners; (8) a statement that any improvements or alterations to the unit made by the seller are in good faith believed to be in compliance with the condo-

commonly referred to as the "disclosure documents." Subsection (b) of the statute says that the association's "principal officer" or another "specifically designated" officer "shall furnish" the required documents to the owner "when requested to do so in writing and within 30 days of the request." § 605/22.1(b). Subsection (c), in turn, provides that "the association or its Board of Managers" may charge the unit owner a "reasonable fee covering the direct out-of-pocket cost of providing such information and copying." § 605/22.1(c).

Sudler, the property manager for the two condominium associations, contracted with HomeWiseDocs.com, an online document service that assembles the required disclosure documents in portable document form ("PDF"), giving condominium owners almost instantaneous electronic access to the material needed to close a resale transaction.[2] Sudler's website provides a link to HomeWise's site so owners can easily click through and order a downloadable PDF of their disclosure documents. But this convenience carries a cost. HomeWise charged Horist $240 for a PDF of his disclosure documents. The Eymans paid $365 for a PDF of theirs.

---

minium instruments; and (9) a statement of the identity and mailing address of the association's principal officer or of any other officer or agents specifically designed to receive notices. 765 ILL. COMP. STAT. 605/22.1(a)(1)–(9).

[2] HomeWise is a corporation registered in the State of California under the name NextLevel Association Solutions, Inc., doing business as HomeWiseDocs.com.

Horist and the Eymans sued Sudler and HomeWise in Cook County Circuit Court seeking to represent a proposed class of condominium owners "who were charged by or paid a fee to HomeWise" for disclosure documents in connection with a condominium resale. The complaint raises five claims: (1) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (2) a violation of the Condominium Act; (3) aiding and abetting a breach of fiduciary duty; (4) civil conspiracy; and (5) unjust enrichment. HomeWise removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Sudler and HomeWise then filed separate motions to dismiss.

The judge granted the motions. Turning first to the claim under the Condominium Act, the judge held that section 22.1 provides no private right of action—express or implied—for unit sellers. He also ruled that the complaint did not state a viable claim that the PDF fee amounts to an unfair trade practice in violation of the consumer-fraud statute. The judge construed the three common-law claims as requiring an underlying violation of one of these statutes, so he dismissed them as well and entered final judgment for the defendants.

## II. Discussion

We review a dismissal order de novo, construing the complaint in the light most favorable to the plaintiffs and accepting all well-pleaded factual allegations as true. *Ochoa v. State Farm Life Ins. Co.*, 910 F.3d 992, 993 (7th Cir. 2018). To survive a motion to dismiss, the allegations in the complaint "must plausibly suggest … a right to relief, raising that possibility above a speculative level." *EEOC v. Concentra*

*Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quotation marks omitted).

**A. Condominium Act Claim**

The Condominium Act claim rests on allegations that HomeWise's fee for an electronic copy of the required disclosure documents exceeds the "reasonable fee" that condominium associations are permitted to charge under section 22.1(c). We note for starters that the associations are not defendants; this suit is against the property-management firm and its third-party online document vendor. Our first question, however, is whether the plaintiffs have a right of action to enforce section 22.1. The statute doesn't provide an express private remedy, so the plaintiffs advance an argument that a right of action exists by necessary implication.

Illinois courts will recognize an implied right of action only if (1) the plaintiff is within the class of members the statute was enacted to benefit; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) inferring a private right of action is necessary to provide an adequate remedy for statutory violations. *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117 (Ill. 1999). All four factors must be met before a court will recognize an implied remedy. *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027, 1042 (Ill. App. Ct. 2017). Not one of them is satisfied here.

Two decisions of the Illinois Appellate Court largely control the outcome. In *Nikolopulos v. Balourdos*, the court concluded that section 22.1 "was clearly designed to protect prospective *purchasers* of condominium units." 614 N.E.2d

412, 416 (Ill. App. Ct. 1993) (emphasis added). More specifi-
cally, the court held that the statute's purpose is "to prevent
prospective purchasers from buying a unit without being
fully informed and satisfied with the financial stability of the
condominium as well as the management, rules[,] and
regulations which affect the unit." *Id.* The court also deter-
mined that implying a right of action for condominium
purchasers "is consistent with assuring that a prospective
purchaser is fully informed and satisfied before he buys a
condominium unit." *Id.* On this reasoning, the court recog-
nized an implied right of action for prospective condomini-
um purchasers to terminate a sales contract "within a
reasonable time after being furnished information revealing
previously undisclosed material expenses." *Id.* That is, the
court authorized a condominium purchaser who is injured
by a seller's violation of the section 22.1 disclosure duty to
sue for return of his earnest money plus interest. *Id.* at 418.

By its terms, the implied remedy recognized in *Nikolopu-
los* covered condominium purchasers who discover a seller's
section 22.1 violation *before* closing. In *D'Attomo v. Baumbeck*,
the court extended that holding and recognized an implied
right of action for purchasers who discover the violation *after*
closing. 36 N.E.3d 892, 905–07 (Ill. App. Ct. 2015). The court
reiterated the two foundational holdings from *Nikolopulos*:
(1) the statute was designed to protect condominium pur-
chasers; and (2) an implied remedy for purchasers aggrieved
by a seller's violation of the statute "is consistent with
ensuring that a prospective purchaser is fully informed and
satisfied with matters affecting the condominium unit." *Id.* at
907. The court also reasoned that "[t]he disclosure obliga-
tions in section 22.1 would be ineffective, as a practical
matter, if an aggrieved purchaser has no remedy against a

seller who conceals a requested disclosure until after the closing." *Id.* The court thus recognized an implied remedy for aggrieved buyers "where the seller is alleged to have concealed documents requested by the buyer pursuant to section 22.1, the concealment is not discovered until after the closing, and the nondisclosure materially affects the buyer's rights in the condominium unit." *Id.*

The unmistakable takeaway from these two decisions is that section 22.1 is designed to protect the interests of condominium *purchasers*, not condominium *sellers*. That's enough to defeat the plaintiffs' argument for an implied right of action. As owner/sellers they are not within the class of persons the statute was designed to protect, nor have they suffered an injury that the statute was designed to prevent. And implying a remedy for condominium sellers is neither consistent with nor necessary to effectuate the statute's purpose.

The plaintiffs insist that the reasoning of *Nikolopulos* and *D'Attomo* is limited to section 22.1(a), which establishes the unit seller's disclosure obligation to the buyer. The claim here, in contrast, rests on subsection (c), which allows condominium associations to charge a reasonable fee for providing copies of the disclosure documents to unit sellers. That the fee must be "reasonable" shows that unit sellers are within the class of persons the statute was designed to protect. Or so the argument goes.

We're not persuaded. First, neither *Nikolopulos* nor *D'Attomo* distinguishes between subsection (a) and subsection (c). Rather, they discuss only "[t]he disclosure requirements imposed by § 22.1." *D'Attomo*, 36 N.E.3d at 905. Moreover, as a general rule of interpretation, Illinois courts

read statutes as a whole rather than focusing on isolated subsections. *See Metzger v. DaRosa*, 805 N.E.2d 1165, 1169 (Ill. 2004). Reading section 22.1 in this holistic way, subsection (a) of the statute establishes the seller's duty to disclose an array of important documents to the buyer; subsection (b) requires condominium associations to furnish the required documents to unit owners within 30 days of a written request; and subsection (c) allows associations to charge a reasonable fee for doing so. The statute works as an integrated whole for the benefit of prospective condominium *purchasers*, not *sellers.*

Given the manifest statutory purpose of transparency for prospective condominium buyers, we cannot conclude that the statute was designed to prevent injury to unit sellers. To the contrary, the statute is plainly designed to protect condominium purchasers against fraud (of the concealment variety) by condominium sellers. Together subsections (b) and (c) implement the disclosure duty in subsection (a) and thus work toward that end. They are not independent entitlements for the benefit of condominium associations and unit sellers.

We therefore hold that section 22.1 does not confer an implied right of action on condominium owners. The judge properly dismissed the Condominium Act claim.

**B. Consumer Fraud Act Claim**

Next up is the claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq*. The Consumer Fraud Act "protect[s] consumers … against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v.*

*Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). To prevail on a claim under the Act, "a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019).

No deception is alleged here. The plaintiffs argue instead that the PDF fee is unfair. A trade practice may be deemed unfair if it (1) "offends public policy"; (2) is "immoral, unethical, oppressive or unscrupulous"; or (3) "causes substantial injury to consumers." *Id.* at 739. It's not necessary to establish all three criteria. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961 (quotation marks omitted).

This claim fails for several reasons. First, it appears to rest almost entirely on the alleged violation of section 22.1. That is, the plaintiffs allege that Sudler and HomeWise violated the Condominium Act and thereby violated Illinois public policy. As we've explained, however, it's the *condominium association's* duty to furnish the required disclosure documents to unit owners on request; as a corollary, it may charge a reasonable fee for doing so. § 605/22.1(b), (c). And although the association may retain a professional management firm to handle the day-to-day operation of the property, it cannot outsource its statutory duties to the property-management company. *Henderson v. Lofts at Lake Arlington Towne Condo. Ass'n*, 105 N.E.3d 1, 15 (Ill. App. Ct. 2018) (holding that an association retains a statutory duty under

the Condo Act to care for common areas even though it hired a property manager).

To be sure, the Condominium Act establishes standards of conduct for property-management firms. *See generally* 765 ILL. COMP. STAT. 605/18.7. But this section of the Act explicitly precludes "a cause of action by a unit owner … against a community association manager or the firm of a community association manager," while preserving "any right of action by a unit owner" against the association's "board of directors under existing law." § 605/18.7(g)(1)–(2).

Given these headwinds, the plaintiffs try a different tack. They argue that Sudler and HomeWise can be liable for violating the Consumer Fraud Act because they acted on behalf of the condominium associations to breach the associations' duties under section 22.1. This argument distorts basic agency law; it is essentially "the reverse of vicarious liability." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 766 (7th Cir. 2009). In Illinois, as elsewhere, a court "may not impute a duty the *principal* owed to a third party to an agent merely acting pursuant to duties it, in turn, owed to the principal." *Id.* (applying Illinois law). Put slightly differently, "[w]hile the acts of an agent may be considered to be acts of the principal, acts of the principal are never imputed to the agent." *Stein v. Rio Parismina Lodge*, 695 N.E.2d 518, 522 (Ill. App. Ct. 1998) (citation omitted). For an agent to be liable in tort to a third party harmed by the agent's conduct, the agent must breach an independent duty that he owes to the third party. *Schur*, 577 F.3d at 766; *see also* RESTATEMENT (THIRD) OF AGENCY § 7.02 (Am. Law Inst. 2006).

Thus stripped of its Condominium Act premise, the Consumer Fraud Act claim rests on nothing more than a generic

allegation that HomeWise charged too much for a PDF of the disclosure documents. But the Illinois courts have held that "charging an unconscionably high price generally is insufficient to establish a claim for unfairness." *Robinson*, 775 N.E.2d at 961. The judge correctly dismissed this claim.

**C. Additional Claims**

We can make short work of the three common-law claims. Unjust enrichment is not a separate cause of action under Illinois law. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). Neither is civil conspiracy. *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (Ill. App. Ct. 2000) ("[A] conspiracy is not an independent tort. Where, as here, a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails.").

The remaining claim is for breach of fiduciary duty. This claim is derivative, not direct. That is, the plaintiffs allege that Sudler and HomeWise "aided and abetted" a breach of fiduciary duty by the condominium associations. It's true that the officers and board members of a condominium association owe a fiduciary duty to unit owners. 765 ILL. COMP. STAT. 605/18.4. Part of that duty includes compliance with the requirements of the Condominium Act. *Davis v. Dyson*, 900 N.E.2d 698, 712 (Ill. App. Ct. 2008). But the complaint does not allege facts that, if true, could support an inference that the officers or board members of either condominium association committed a fiduciary breach. There

is no allegation, for example, that an officer or board member refused to produce the disclosure documents for the plaintiffs upon request or charged them an excessive fee to make copies. Rather, the complaint alleges only that the condominium associations retained Sudler to handle day-to-day property management and that Sudler in turn contracted with HomeWise, an online vendor that assembles the required disclosure documents in PDF format for a fee. This contractual arrangement is not a breach of the board members' fiduciary duties. It does not become one even if we accept, as the complaint alleges, that HomeWise's fee exceeded the out-of-pocket cost of making the PDF.

AFFIRMED